## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FTI CONSULTING, INC.,<br>a Maryland corporation, and<br>FTI LLC, a Maryland limited liability<br>corporation,<br><br>      Plaintiffs,<br><br>v.<br><br>SECRETARIAT ADVISORS, LLC,<br>a Delaware limited liability company,<br><br>      Defendant. | Civil Action No. 1:24-CV-1356- TWT |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR CERTIFICATION TO THE SUPREME COURT OF GEORGIA

Plaintiffs FTI CONSULTING, INC. and FTI, LLC ("FTI" or "Plaintiffs") hereby submit their Reply Brief in Support of their Motion for Certification.

## I. INTRODUCTION

In *Parnell v. Sherman & Hemstreet, Inc.*, 364 Ga. App. 205 (2022), the Georgia Court of Appeals expanded the stranger doctrine so far beyond all logical bounds that, if followed, the doctrine would effectively eviscerate virtually any claim for tortious interference. This expansion is unprecedented, and contrary to decades of clear and controlling Georgia Supreme Court precedent, as articulated most recently in *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604 (1998). This

Court should recognize *Parnell* for what it is – a wrongly decided outlier – and not follow it here. But should the Court believe for any reason that it should follow *Parnell* or that *Parnell* has caused Georgia law on the applicability of the stranger doctrine to become unsettled, then the Court should certify FTI's proposed question.

Contrary to Secretariat's argument otherwise, FTI's request for certification plainly meets the standard for certification. And certification is particularly warranted when the proposed question involves, at its most fundamental level, not just the continued viability of FTI's claim for tortious interference, but the continued viability of any state common law claim for tortious interference in general.

## II. <u>ARGUMENT AND CITATIONS TO AUTHORITY</u>

**A. <u>The legal standard for certification.</u>**

This Court may certify a question to the Supreme Court of Georgia where there are "questions of the laws of this state which are determinative of the case and there are no clear controlling precedents in the decisions of the Supreme Court of this state . . . ." O.C.G.A. § 15-2-9(a). "Federal courts have discretion to certify 'novel, unsettled questions of state law' to the state's highest court for resolution." *Boone v. Corestaff Support Servs., Inc.*, 805 F. Supp. 2d 1362, 1376 (N.D. Ga. 2011). "Accordingly, 'where there is doubt in the interpretation of state law . . . a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or

change existing law." *Id*.[1] The use of certification rests in the sound discretion of the federal court. In this regard, the Eleventh Circuit's practice has been to resort to certification 'with restraint' upon consideration of the following factors: [1] 'the closeness of the question and the existence of sufficient sources of state law ... to allow a principled rather than conjectural conclusion,' [2] 'the degree to which considerations of comity are relevant,' [3] the 'practical limitation of the certification process,' and [4] 'judicial efficiency.'" *San Miguel Produce, Inc. v. L.G. Herndon Jr. Farms, Inc.,* No. 6:16-CV-35, 2019 WL 4309021, at *4 (S.D. Ga. Sept. 11, 2019), *certified question answered,* 308 Ga. 812 (2020).

Contrary to Secretariat's assertions, the *Erie* doctrine does not oblige this court to "blindly" follow an intermediate state appellate court decision when there is "persuasive data that the highest court of the state would decide otherwise." *See Feminist Women's Health Ctr., Inc. v. Mohammad*, 586 F.2d 530, 552 (5th Cir. 1978) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)); *Williams v. Allen*, No. 1:20-CV-00186-JPB, 2023 WL 2977366, at *5 (N.D. Ga. Apr. 17, 2023).[2]

---

[1] "Only through certification can federal courts get definitive answers to unsettled state law questions. Only a state supreme court can provide what we can be assured are 'correct' answers to state law questions, because a state's highest court is the one true and final arbiter of state law." *Pogue v. Oglethorpe Power Corp.*, 82 F.3d 1012, 1017 (11th Cir*.), certified question answered*, 267 Ga. 332 (1996).

[2] Secretariat cites to O.C.G.A. § 15-3-1(d) for the proposition that *Parnell* is binding precedent. *Parnell,* however, cannot overrule Georgia Supreme Court precedent on the stranger doctrine, and it certainly does not follow it. Moreover, Secretariat's

**B.  <u>The standard for certification is met here.</u>**

The proposed question for certification is determinative of FTI's claim for tortious interference. That is sufficient regardless of whether it is dispositive of FTI's entire case. For example, in *San Miguel Produce, Inc.*, the district court certified a question to the Georgia Supreme Court even though the questions at issue would not dispose of all claims in the case. *San Miguel Produce, Inc.*, 308 Ga. at 814–15 (noting that "San Miguel's remaining claims, *apart from a federal law claim and a claim for breach of the ROBO operating agreement*, are based on the GSA. Therefore . . . the application of the relevant Georgia law to the GSA is 'the determinative question' upon which the case turns."). Consequently, "determinative of the case" does not necessarily mean determinative of *every* claim in the case, especially where, as here, the other factors weigh heavily in favor of certification.

Secretariat's argument that the question to be certified must be determinative of the entire case is also illogical. If this were true, then no case with multiple causes of action could ever be certified. In even the simplest cases, litigants would have to

---

contention that *Parnell* "in effect" overruled prior, inconsistent decisions of the Court of Appeals is incorrect. A division of the Court of Appeals can only overrule prior decisions of the Court upon consultation "among all nondisqualified judges of the Court." *Temple v. Hillegass*, 344 Ga. App. 454, n. 1 (2018); *White v. State*, 305 Ga. 111, 122 n. 10 (2019); Ga. Ct. App. R. 33.3. Nothing suggests that the *Parnell* Court followed this procedure, and earlier decisions of the Court of Appeals that conflict with later-decided cases "still control [where they have] not been reversed or overruled." *Lutz v. Greensky, LLC*, 369 Ga. App. 518, 524 (2023).

choose between asserting various applicable causes of action against a defendant *or* only one claim (or directly related claims) solely to maintain the opportunity for certification. Such an outcome cannot be the Georgia General Assembly's intent.

**C.** ***Parnell* is an intermediary appellate decision that is contrary to clear and controlling Georgia Supreme Court precedent on the stranger doctrine.**

Secretariat argues that *Parnell* is clear and controlling precedent that should dictate the outcome of FTI's tortious interference claim. Secretariat is wrong. *Parnell* is an intermediate appellate court decision that contradicts and misapplies over two decades of Georgia Supreme Court precedent establishing the scope and applicability of the stranger doctrine, articulated most recently in *McLane*.

In *Parnell*, the Georgia Court of Appeals summarily and wrongly concluded (without the benefit of any relevant briefing from the plaintiff) that a competitor had a *legitimate* financial interest in inducing the plaintiff's former officer to breach non-competition and non-solicitation provisions in his employment contract with plaintiff: "In other words, the RE/MAX parties had *a legitimate financial interest* in Parnell potentially violating the agreement by inducing S&H's clients or potential clients to move their business from S&H to RE/MAX." *Parnell,* 364 Ga. App. at 216. The RE/MAX parties' interest in Parnell breaching his employment agreement, however, was in no way *legitimate* or *privileged* as those concepts have been defined by decades of Georgia Supreme Court decisions and the Georgia state legislature.

**1. *McLane* is contrary to and does not support the holding in Parnell.**

Nothing in *McLane* or any other Georgia case supports or informs *Parnell's* holding, nor is *Parnell* a mere "continuation" of *McLane* as Secretariat argues. It is a substantial departure.[3] In *McLane*, the Georgia Supreme Court acknowledged that "[p]arties to a contract have a property right therein with which a third party cannot interfere *without legal justification or privilege*, and a party injured by another's wrongful interference may seek compensation in tort. *Luke v. DuPree,* 158 Ga. 590(1), 124 S.E. 13 (1924); OCGA § 51–12–30." *McLane*, 269 Ga. at 608. Then, citing to *Lake Tightsqueeze, Inc. v. Chrysler First Fin. Servs. Corp.,* 210 Ga. App. 178 (1993) and *Disaster Servs., Inc. v. ERC P'ship*, 228 Ga. App. 739 (1997), the

---

[3] Notably, Secretariat has not cited to any other case with the same holding as *Parnell*. Instead, Secretariat cites to a number of inapplicable and inapposite cases in its brief, none of which involved a direct competitor that derived a financial benefit *solely* from its wrongful interference with contracts, including, for example, *MAC East, LLC v. Shoney's*, 535 F.3d 1293, 1297 (11th Cir. 2008) (holding, under Alabama law, that assignor of commercial lease was not a stranger to the sublease because it left assignor obligated on the covenants of the ground lease, effectively forming a business relationship between it and sublessee); *Britt/Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc.*, 952 F. Supp. 1575, 1584 (N.D. Ga. 1996), *aff'd*, 137 F.3d 1356 (11th Cir. 1998) (holding that insurer was not a "stranger" to marketing agent's contractual and business relations with insurer's general agent and marketing agent's subproducers because without the insurer's insurance to market and sell, purported contractual and business relations at issue would not have existed.); *Lee v. Caterpillar, Inc.*, 496 F. App'x 914, 915–16 (11th Cir. 2012) (holding that terminated employee failed to state a claim against employer's customer for tortious interference with employment where customer was not a stranger to employment contract; employee performed product inspection services in customer's factory pursuant to customer's contract with employer, and claimed that customer's misconduct was in retaliation for his job performance.).

*McLane* Court observed that the stranger doctrine "has been expanded to cover those who benefit *from* the contract of others, without regard to whether the beneficiary was intended by the contracting parties to be a third-party beneficiary" *Id*. at 609. Someone who benefits "from" a contract is very different from someone who benefits solely by inducing someone to breach the contract.[4]

Nothing with respect to the Court's acknowledgement of this expansion, however, leads to the bizarre and circular reasoning of the Court of Appeals in *Parnell* that one automatically becomes a non-stranger to a contract simply by virtue of the financial interest it gains from wrongfully inducing the breach of that contract. And one need look no further than the cases cited by the Georgia Supreme Court in *McLane* to confirm this fact, including *Lake Tightsqueeze* and *Factory Direct*.

In *Lake Tightsqueeze*, the Georgia Court of Appeals determined that a creditor loaning money to a debtor for development of a resort was not a stranger to contracts entered into between the debtor and residential purchasers of resort property because the creditor would ultimately benefit from the contracts. The court determined that the creditor could not have tortiously interfered with the purchase contracts because

---

[4] Secretariat argues that it cannot be a stranger to Mr. Kleinrichert's and Ms. Distler's employment contracts because it is a party to a limited release of their non-compete and non-solicit obligations. But FTI has alleged that Mr. Kleinrichert's and Ms. Distler's knowledge of FTI's confidential and trade secret information was shortly afterwards misappropriated and misused by Secretariat in breach of their surviving employment agreement covenants, and Secretariat is still a stranger to the agreements containing those covenants. *Id*., Dkt. 1 (Complaint), ¶¶ 48-49.

7

"[a] cause of action for intentional interference with contractual rights must be based on '(t)he intentional and *non-privileged* interference by a third party with existing contractual rights and relations." *Lake Tightsqueeze, Inc.*, 210 Ga. App. at 181[5](emphasis supplied).

Likewise, in *Disaster Servs., Inc.,* the Georgia Court of Appeals concluded that the defendant ERC was not a stranger to the contractual relationship between EAL and DSI because it had a *legitimate* interest in the contractual relationship:

> ERC had a *pre-existing* contract for the asset purchase of the leasehold interest in the Reservation Building with EAL and had begun negotiations for the purchase of the property subject to the lease with the Foundation. The delay in the closing of the asset purchase of the leasehold was for the benefit of ERC, so that the building could be restored to its pre-fire condition as required, not only by the asset purchase agreement, but also by the duties under the lease from the Foundation. *ERC was as much a legitimately interested party to the contract between EAL and DSI as was the Foundation, because ERC would receive the Reservation Building upon closing, either "as-is" or fully repaired by DSI.*

*Disaster Servs., Inc.*, 228 Ga. App. at 740 (emphasis supplied). The court highlighted the fact that ERC had a *legitimate* and *pre-existing* contractual interest: "[f]or purposes of this type of tort [tortious interference], "privilege" means *legitimate* economic interests of the defendant or a *legitimate* relationship of the defendant to the contract, so that it is not considered a stranger, interloper, or meddler. . . . Where appropriate circumstances appear from the evidence that a defendant had a *legitimate* interest in either the contract or a party to the contract, the defendant is not a stranger to the contract, although the defendant is a 'non-signer of a particular

contract[, it is not] a stranger to the contract itself or to the business relationship giving rise thereto and underpinning [the contract].'" *Id.* (emphasis supplied). The critical difference between these cases and this one is that they involved a third party who *legitimately* benefitted *from* a contract's *performance* versus one who benefitted only from inducement of the contract's *breach*.

## 2. The stranger doctrine and the fair competition privilege are inextricably intertwined.

Secretariat argues that the Georgia Supreme Court's decision in *Orkin Exterminating Co. v. Martin Co.,* 240 Ga. 662 (1978) in which it adopted the theory of privilege set out in the Restatement of Torts, section 786, is irrelevant to the analysis because that case did not involve the stranger doctrine. But Secretariat misses the point. By adopting the Restatement, the Georgia Supreme Court has, at a minimum, implicitly recognized that a business can wrongfully interfere with a contract between a competitor and its employee, regardless of whether it may gain a financial advantage as a result of inducing its breach. *Id.*

And nothing in *Orkin* or the Restatement supports Secretariat's assertion that the fair competition privilege and the stranger doctrine are "entirely separate legal principles."[5] To the contrary, the concepts are inextricably intertwined. As explained

---

[5] Curiously, Secretariat also argues that "the stranger doctrine derives from the Restatement (Second) of Torts § 766." But the stranger doctrine is not mentioned in this section of the Restatement. *See* Restatement (Second) of Torts § 766 (1979). *See also Velocity Intern., Inc. v. Celerity Healthcare Solutions, Inc*., 846 F. Supp .2d

by the Georgia Court of Appeals in *United Scis., LLC v. Kellett*, 368 Ga. App. 690,

695–96, (2023), *reconsideration denied* (July 12, 2023), *cert. denied* (Feb. 6, 2024):

> To establish under the first element that the defendant acted "*without privilege*," the plaintiff must show that "the defendant was an intermeddler or 'stranger' to the [contract or] business relationship at issue." "[I]f the defendant has a *legitimate economic interest* in either the contract or a party to the contract, ... [or w]here a defendant has a financial interest in one of the parties to the contract or in the contract, the defendant is not a stranger to the contract or business relationship, even though [he] is not a signatory to the contract."

*United Scis.*, 368 Ga. App. at 695–96 (internal citations omitted, emphasis added).

### 3. *Parnell* is contrary to the GRCA's definition of legitimate business interests as well as the public policy behind the Act.

Under the Georgia Restrictive Covenants Act (GRCA), the Georgia

legislature has deemed that "legitimate business interest[s]" shall include, but are

not limited to, "[t]rade secrets," "[v]aluable confidential information," "[s]ubstantial

relationships with specific prospective or existing customers," "good will," and

"specialized training" O.C.G.A. § 13-8-51(9). And the Georgia Supreme Court has

explicitly recognized that, with the passage of the GRCA, the Georgia legislature

determined that employers are "entitled to protect [themselves] from the risk that a

former employee might appropriate customers by taking unfair advantage of the

contacts developed while working for the employer" by entering into restrictive

---

332, 372, 374 (noting that Section 766 of the Restatement and the commentary accompanying it do not contain a statement of the "stranger" rule as it has been defined in other jurisdictions).

covenants. *Palmer & Cay of Ga., Inc. v. Lockton Cos. Inc.*, 280 Ga. 479 (2006) (quoting *W.R. Grace & Co. v. Mouyal*, 262 Ga. 464 (1992)). *See also Glob. Payments Inc. v. Green*, 484 F. Supp. 3d 1372, 1380 (M.D. Ga. 2020) (employer had *legitimate business interest* in noncompete contract, including protecting its investment in employee, as well as protecting its client and partner relationships, goodwill, and confidential and trade secret information from unfair competition.) In the Georgia Supreme Court's most recent decision regarding the enforceability of restrictive covenants, the court underscored the enforceability of reasonable contracts that restrict certain competitive activities. *See Motorsports of Conyers, LLC v. Burbach*, 317 Ga. 206 (2023).

If reasonable restrictive covenants are enforceable at all, then a claim for tortious interference with those contracts must remain viable, notwithstanding the fact that a competitor gains financially from its wrongful interference. Indeed, presumably *the only reason* why a competitor would tortiously interfere with a restrictive covenant would be to gain some financial interest or advantage from doing so. But that interest is never "legitimate" without some relationship from which the defendant would benefit *from* the contract's *performance*, not just its breach. If the illogical conclusion of *Parnell* is followed, then a claim for tortious interference with a noncompete, non-solicit, or nondisclosure agreement can no

longer exist. Secretariat, not surprisingly, conveniently ignores this paradoxical and absurd conclusion and urges this Court to blindly go along with it.

In sum, *Parnell* ignores decades of Georgia Supreme Court precedent on the stranger doctrine, other factually on point Georgia case law, and even statutory law that discuss what constitutes a "legitimate" financial interest for competition purposes. Here, persuasive data exists, in spades, that the highest court of the state would conclude that *Parnell* is wrongly decided. If this Court has any doubt about *Parnell's* applicability to this case, then it should certify FTI's proposed question.

## D. **The remaining factors strongly support the need for certification.**

The other factors to be considered also weigh heavily in favor of certification. If the Court agrees that *Parnell* has created an unsettled question of law regarding the proper application of the stranger doctrine, then *Parnell* inevitably creates a close question of state law with respect to FTI's claim for tortious interference here. In that case, certification seeking an authoritative statement from the Georgia Supreme Court is the most appropriate procedure to resolve the issue.

Secretariat contends that the cases decided since *Parnell,* including *Factory Direct Wholesale, LLC v. Office Kick, Inc.*, No. 4:21-cv-00368, 2023 WL 2244694 (S.D. Ga. Feb. 27, 2023) and *Lake Region Med., Inc. v. Struthers*, No. 4:22-cv-00222-WMR, 2023 WL 10407062, at *3 (N.D. Ga. Sept. 5, 2023), do not reflect that *Parnell* creates a close question of law. Specifically, Secretariat argues that these

cases do not support FTI's position that Georgia courts are side-stepping the implications of *Parnell.* A plain reading of these cases demonstrates otherwise.

In *Factory Direct,* the court expressly noted that "[Defendants] ha[ve] not provided, and the Court is not aware of, any case holding two companies in direct competition, like [the parties] in this case, are not strangers to an agreement between one of the companies and a third party." *Factory Direct Wholesale, LLC,* 2023 WL 2244694 at *5-6 (citing to *Interra Int'l, LLC v. Al Khafaji*, No. 1:16-CV-1523-MHC, 2017 WL 4866266 at *8 (N.D. Ga. Mar. 21, 2017)). In *Lake Region*, the court concluded that *Parnell* was not applicable on the face of the plaintiff's complaint, and therefore engaged in no further analysis of its applicability in general. *Lake Region Med., Inc.*, 2023 WL 10407062, at *3.[6]

Further, because the proposed question for certification here involves, at its most fundamental level, the continued viability and availability of the state common law tort claim of tortious interference and related major public policy implications, principles of comity require that the issue be decided by the Georgia Supreme Court. *See Royal Capital Dev. LLC v. Md. Cas. Co.*, 659 F.3d 1050 (11th Cir. 2011)

---

[6] In footnote 11 of its brief, Secretariat takes an unnecessary and unwarranted potshot at FTI's counsel by pointing out that, in the *Lake Region* case, attorneys working in the same firm cited *Parnell* in opposition to a motion to dismiss a tortious interference claim. But in that case, Judge Ray denied the motion to dismiss, holding that plaintiff alleged facts distinguishable from *Parnell*, thus sidestepping *Parnell* entirely. In other words, the lawyers *lost* the argument, just as Secretariat should here.

(certifying "[b]ecause this case involves an *unsettled question* of Georgia law" and "where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* guesses and to offer the state court the opportunity to interpret or change existing law") (emphasis added).

The benefits of certification also outweigh its practical limitations. Should the Court choose to not proceed with certification and dismiss FTI's tortious interference claim then the unresolved specter of *Parnell* will continue to bog down this litigation as this issue will inevitably be raised on appeal to the Eleventh Circuit and potential certification to the Georgia Supreme Court at that point. *See Cosper v. Ford Motor Co.,* No. 2:18-CV-189-RWS, 2023 WL 2374246, at *1 (N.D. Ga. Feb. 14, 2023), *certified question answered,* 317 Ga. 356 (2023) ("Certification remedies this problem because it will cut out 'the middleman' and prevent lengthy post-trial appeals."). Certifying the question now is the most expeditious and resource-conscious manner to address the issue unless the Court denies Secretariat's motion to dismiss outright. *See Dekalb Cnty. Sch. Dist. v. Ga. State Bd. of Educ.*, No. 1:13-CV-544-RWS, 2013 WL 791266 (N.D. Ga. Mar. 4, 2013). For the same reasons, this Court should also stay the proceedings until the certified question is answered. *See Cosper*, 2023 WL 2374246 at *7.

Finally, the Georgia Supreme Court's answer to the proposed certified question would resolve FTI's tortious interference claim in this case as well as the significant conflict that now exists between the holding in *Parnell* and rest of Georgia case law addressing the proper scope and applicability of stranger doctrine. By definition, a question that determines the viability of FTI's claim is not hypothetical and cannot be merely advisory.

### III.  <u>CONCLUSION</u>

For all of these reasons, the Court should certify to the Supreme Court of Georgia the following question:

> Is a company a stranger to the contractual and business relations between its competitor and the competitor's employees such that a claim for tortious interference can be asserted against it for its willful and malicious interference with those relations when the only financial interest it has in those relations is that derived solely from its own interference?

BERMAN FINK VAN HORN P.C.

By:    */s/ Benjamin I. Fink*
       Benjamin I. Fink
       Georgia Bar No. 261090
       Cheralynn M. Gregoire
       Georgia Bar No. 309760
       3475 Piedmont Road, NE, Suite 1640
       Atlanta, Georgia 30305
       bfink@bfvlaw.com
       cgregoire@bfvlaw.com
       (404) 261-7711

15

and

Thomas Gilbertsen (admitted *pro hac vice*)
DUEFFERT GILBERTSEN PLLC
1627 Connecticut Avenue N.W., Ste 6
Washington, D.C.  20009
tgilbertsen@dueffertlaw.com
(202) 621-6516

COUNSEL FOR PLAINTIFFS FTI
CONSULTING, INC. and FTI, LLC

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rules 7.1D and 5.1B, the undersigned counsel certifies that this document complies with the Local Rules' requirements as to font in that it has been prepared in Times New Roman, 14 point.

BERMAN FINK VAN HORN P.C.

By: *<u>/s/ Benjamin I. Fink</u>*
       Benjamin I. Fink
       Georgia Bar No. 261090
       Email: bfink@bfvlaw.com

3475 Piedmont Road NE      COUNSEL FOR FTI CONSULTING,
Suite 1640                   INC. and FTI, LLC
Atlanta, Georgia 30305
(404) 261-7711

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 28th day of August, 2024, that the undersigned electronically filed the foregoing PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CERTIFICATION TO THE SUPREME COURT OF GEORGIA using the CM/ECF System which automatically sends e-mail notification of such filing to all counsel of record.

Seth T. Ford, Esq.
John Sikes Gibbs, III, Esq.
Moses M. Tincher, Esq.
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
seth.ford@troutman.com
moses.tincher@troutman.com

*Counsel for Defendant Secretariat Advisors, LLC*

BERMAN FINK VAN HORN P.C.

By:    */s/ Benjamin I. Fink*
Benjamin I. Fink
Georgia Bar No. 261090
3475 Piedmont Road, NE, Suite 1640
Atlanta, Georgia 30305
bfink@bfvlaw.com
(404) 261-7711
(404) 233-1943 (Facsimile)

COUNSEL FOR FTI
CONSULTING, INC. AND FTI, LLC